UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY BARNETT,

    Petitioner,

        v.                                CAUSE NO. 3:19-CV-609-JD-MGG

WARDEN,

    Respondent.

OPINON AND ORDER

Anthony Barnett, a prisoner without a lawyer, filed a habeas petition challenging his 2003 convictions in Floyd County for burglary, battery, intimidation, and adjudication as a habitual offender. (ECF 1.) The respondent moves to dismiss, arguing that the court has no jurisdiction over the petition because it is an unauthorized, successive petition. (ECF 12). For the reasons stated below, the motion is denied.

I.      BACKGROUND

This case has a long and complex procedural history. It began in 2002, when Barnett went to the home of Cynthia Bogard, an acquaintance whom he believed had spoken ill of him to his estranged wife, with whom he was trying to reconcile. *See Barnett v. State*, 83 N.E.3d 93, 96 (Ind. Ct. App. 2017). Barnett confronted Bogard, pushed her to the ground, stomped on her chest with his heel, and threatened to kill her if she did not recant the statements she had made to his wife. *Id.* Bogard was able to flee to a neighbor's house and call the police. *Id.* The state initially charged Barnett with one count of felony battery, and a jury trial was scheduled for February 17, 2003. *Id.* at 97.

Two weeks before the scheduled trial, the state filed an amended information adding a habitual offender count. *Id.* Barnett appeared for a hearing that same day, but for unknown reason his counsel was not present; during the hearing, Barnett did not raise any objection to the addition of the habitual offender count. *Id.* Six days before the trial, the state filed a second amendment to the information adding one count of felony burglary and one count of felony intimidation. *Id.* Barnett's counsel objected, but the court allowed the amendment. *Id.* The court then granted two continuances for Barnett to prepare for trial, and a jury trial began two months later. *Id.* Barnett was found guilty of burglary, battery, intimidation, and being a habitual offender. *Id.* The court ordered him to serve an aggregate sentence of 80 years—50 years for the burglary conviction, 5 years for the battery conviction (to run concurrently with the burglary sentence), and an additional 30 years for the habitual offender enhancement.[1] *Id.* The Indiana Court of Appeals affirmed Barnett's convictions and sentence on direct appeal. *Id.*

In September 2005, Barnett filed a petition for state post-conviction relief, alleging that his trial counsel rendered ineffective assistance. *Id.* at 97-98. He also argued that his appellate counsel had been ineffective on direct appeal for inadequately challenging the habitual offender amendment and for not raising any challenge to the timeliness of the second amended information. *Id.* at 98. The post-conviction court denied Barnett's petition in September 2008, and Barnett pursued a *pro se* appeal. The Indiana Court of Appeals affirmed. *Id.* In pertinent part, the court concluded that a

---

[1] For unknown reasons, the court did not include a specific sentence for the intimidation conviction. *See Barnett*, 83 N.E.3d at 97.

2

challenge to the habitual offender enhancement had been waived due to the lack of a timely objection, and that an argument on this ground therefore would not have been meritorious. *Id.* The court further concluded that Barnett's appellate counsel was not ineffective in failing to raise an argument regarding the timeliness of the second amended information, because state law permitted an amendment at any time prior to trial, as long as the defendant's rights were not prejudiced. *Id.* In the court's view, Barnett's rights had not been prejudiced because he was granted an additional two months to prepare for trial. *Id.* The court therefore affirmed the denial of post-conviction relief. *Id.*

In 2010, Barnett filed a petition for a writ of habeas corpus in federal court. He asserted a variety of grounds, including that his trial counsel was ineffective in failing to call certain witnesses and to impeach a key prosecution witness; that his appellate counsel was ineffective in failing to argue that the second amendment to the information adding the burglary charge was untimely; and that the trial judge was biased against him. *Barnett v. Superintendent*, No. 3:10-CV-157-TLS, 2013 WL 3338493, at *3-*5 (N.D. Ind. July 2, 2013). Initially, the court denied relief. *Id.* at *10. In pertinent part, the court concluded that the Indiana Court of Appeals had not unreasonably applied clearly established federal law in adjudicating Barnett's claims of ineffective assistance of counsel. *Id.* at *7. The state court had determined "that any claim by the Petitioner that the burglary charge was an untimely addition to the charging information would likely have been unsuccessful under Indiana law." *Id.* Because it appeared that a challenge to the additional burglary charge would not have been

3

successful under Indiana law, this court could not conclude "that such a challenge was clearly stronger than the issues raised by counsel on appeal[.]" *Id.* This court therefore denied federal habeas relief. *Id.*

In February 2014, the U.S. Court of Appeals for the Seventh Circuit reversed and remanded for reconsideration of Barnett's claim that appellate counsel was ineffective in failing to challenge the second amendment to the information in light of *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013). In *Shaw*, the Seventh Circuit found merit to an Indiana petitioner's argument that his appellate attorney was ineffective in failing to raise an argument about the timeliness of an amendment to the information. *Id.* at 915-16.

On remand, and in light of *Shaw*, this court concluded that Barnett's appellate counsel was ineffective in failing to argue on direct appeal that the state's second amendment to the information was untimely. *Barnett v. Warden*, No. 3:10-CV-157-TLS, 2015 WL 3466294, at *2-*7 (N.D. Ind. June 1, 2015). The court therefore conditionally granted Barnett's habeas petition, ordering the state to either release him within 120 days or grant him a new direct appeal where he could raise this argument with the assistance of counsel. *Id.* In a footnote, the court noted that it was "disconcerting" that appellate counsel had not raised any issue regarding Barnett appearing without counsel at a pretrial hearing, given the state court's conclusion that Barnett had waived an objection to the first amendment to the information by failing to object at that hearing. *Id.* at *4 n.1. The court noted: "If the State permits the Petitioner to file another direct appeal, this is an issue that warrants further exploration." *Id.*

4

Thereafter, Barnett was permitted to file a new direct appeal in the Indiana Court of Appeals. *Barnett*, 83 N.E.3d at 99. Through his appointed counsel, he raised a number of arguments pertaining to the state's ability to conduct another direct appeal. *Id.* The Indiana Court of Appeals rejected these arguments, concluding that a new direct appeal was one of the options given by this court to remedy the Sixth Amendment violation. *Id.* The Indiana court observed, "If Barnett believed that it was error for the District Court to grant a new direct appeal as part of the remedy, he should have sought relief in the federal courts." *Id.*

Barnett also raised a challenge to the timeliness of the state's second amendment to the information. *Id.* at 100. The Indiana Court of Appeals rejected this argument as well, concluding that IND. CODE § 35-34-1-5, as revised after Barnett's trial, permitted amendments to an information any time before trial, provided that the amendment did not violate the defendant's substantial rights. *Id.* at 100-01. The court further concluded that the amendment did not prejudice Barnett's substantial rights, because he was given two extensions of the trial date and had ample time to prepare for trial. *Id.* at 102.

Barnett also argued that his Sixth Amendment right to counsel was violated because he was denied counsel at a critical stage when he appeared at a pretrial hearing without his counsel present. *Id.* at 103. The Indiana Court of Appeals concluded that any violation of Barnett's rights was harmless, because even though counsel was not present at the hearing, he could have objected to the habitual offender amendment at any time before trial. *Id.* at 103-04. The court therefore affirmed Barnett's conviction in

5

all respects. *Id.* at 104. Barnett sought transfer to the Indiana Supreme Court, but his petition was denied. *Barnett v. State*, 95 N.E.3d 1294 (Ind. 2018).

Barnett then returned to federal court with a new habeas petition raising the following claims: (1) his Sixth Amendment rights were violated when he appeared *pro se* at the hearing following the addition of the habitual offender charge; (2) the Indiana Court of Appeals violated the Ex Post Facto Clause by retroactively applying the 2007 version of IND. CODE § 35-34-1-5 to his 2003 conviction and sentence; (3) the Indiana Court of Appeals erred in concluding that the second amendment to the information did not prejudice his fair trial rights under the Sixth Amendment; (4) and the Indiana Court of Appeals violated his Equal Protection rights by applying the 2007 version of IND. CODE § 35-34-1-5 to his 2003 conviction and sentence. (ECF 1 at 3-5.)

II.    ANALYSIS

A state inmate generally is afforded one opportunity to pursue federal habeas relief challenging his conviction. *See Banister v. Davis*, 140 S. Ct. 1698, 1704 (2020); 28 U.S.C. § 2244. "[A]fter that, the road gets rockier." *Banister*, 140 S. Ct. at 1704. To file a "second or successive application" for federal habeas relief, the petitioner must first obtain leave from the Court of Appeals, and must make a prima facie showing that his petition satisfies the statute's gatekeeping requirements. 28 U.S.C. § 2244(b)(3)(A)-(C). If a successive petition has not been authorized by the Court of Appeals, the district court has no jurisdiction to consider it and must dismiss the case. *Burton v. Stewart*, 549 U.S. 147, 157 (2007).

What constitutes a "second or successive" application is not always an easy question, however. The phrase is a "term of art," which "is not self-defining." *Banister*, 140 S. Ct. at 1704 (citation omitted). The term does not simply refer "to all habeas filings made second or successively in time, following an initial application." *Id.* (citation and internal quotation marks omitted). For instance, where the first petition is dismissed for technical or procedural reasons, such as failing to pay the filing fee or failing to exhaust state court remedies, a second petition is not considered successive. *United States v. Obeid*, 707 F.3d 898, 903 (7th Cir. 2013). The U.S. Supreme Court has also held that if the petitioner's first habeas petition results in an order granting resentencing, a subsequent petition challenging the new sentence is not considered successive. *Magwood v. Patterson*, 561 U.S. 320, 342 (2010) (holding that second-in-time petition was the first to challenge the defendant's new death sentence imposed after resentencing, and was therefore not successive).

The respondent argues that the present petition is successive within the meaning of section 2244 because Barnett has already pursued federal habeas relief, and he was not granted a new sentencing hearing like the petitioner in *Magwood*. (ECF 12-1 at 2-3.) It is true that this case does not appear to fit squarely within the holding of *Magwood*. Barnett obtained favorable relief in connection with his first habeas petition, but was not resentenced. However, that is not the end of the analysis.

As a result of Barnett's first petition, this court ordered the state to either release Barnett or reopen his direct appeal proceedings. The state opted to reopen his direct appeal. The claims Barnett now seeks to raise stem from the Indiana Court of Appeals'

7

resolution of his claims in the second direct appeal. (ECF 1 at 3-4.) Such claims were not "ripe" at the time the first petition was filed—indeed, the second direct appeal had not yet occurred at that point. *See Obeid*, 707 F.3d at 903 ("[A] petition or motion based on a claim that did not become ripe any earlier than until after the adjudication of the petitioner's first petition or motion is not 'second or successive' within the meaning of Sections 2244 and 2255(h)."); *see also Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998).

The Seventh Circuit has cautioned that courts determining whether a second-in-time petition is successive must "be careful to distinguish genuinely unripe claims (where the factual predicate that gives rise to the claim has not yet occurred) from those in which the petitioner merely has some excuse for failing to raise the claim in his initial petition (such as when newly discovered evidence supports a claim that the petitioner received ineffective assistance of counsel); only the former class of petitions escapes classification as 'second or successive.'" *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citation omitted). In *Flores-Ramirez*, the Seventh Circuit found a claim not to be successive where it was based on events occurring during post-conviction proceedings that were held after the first federal habeas petition was resolved. *Id.* The court concluded that this claim "was unripe at the time of his first petition because those proceedings had not yet occurred," and it was thus not barred as successive. *Id.*; *see also Shepeck*, 150 F.3d at 800-01 ("A collateral attack should be disregarded for counting purposes . . . when the first [petition] is successful, and the prisoner contends

that new errors ensued."). These cases counsel in favor of a conclusion that Barnett's second petition is not "successive" within the meaning of section 2244.

Although the Seventh Circuit does not appear to have addressed this exact factual scenario—where a petitioner obtains a new direct appeal as a result of his first petition—the Sixth Circuit has addressed this issue. *Storey v. Vasbinder*, 657 F.3d 372, 377 (6th Cir. 2011), *cert. denied* 565 U.S. 1269 (2012). The Sixth Circuit held that the second petition should not be considered successive, concluding that "the tally of applications is reset to zero after the petitioner concludes a direct appeal that was ordered in response to an earlier petition."[2] *Id.* The court explained as follows:

> The reason why the petitioner was granted a new appeal is that his counsel was ineffective with respect to his first direct appeal; . . . such a petitioner should be given the same clean slate with respect to habeas review as a defendant whose counsel did not bungle his first direct appeal. The upshot of this rule is that the petitioner can eventually seek habeas relief on all of the claims presented in his remedial appeal, in which presumably he will have competent counsel.

*Id.* (citations and internal quotation marks omitted).

---

[2] The court notes that the Sixth Circuit in *Storey* suggested that the Seventh Circuit had adopted this same approach. *See Storey*, 657 F.3d at 377. However, *Storey* cites to a Second Circuit case, which in turn cites to the Seventh Circuit's opinion in *Shepeck*. *Urinyi v. United States*, 607 F.3d 318, 321 (2d Cir. 2010). *Shepeck* involves slightly different facts than are presented here. In *Shepeck*, a federal petitioner filed a motion under 28 U.S.C. § 2255 claiming that his trial attorney had abandoned him in the trial court. *Id.* As a result, the district court vacated the judgment and resentenced him, and he thereafter pursued an appeal in the Seventh Circuit. *Id.* He later sought permission to file a second motion under 28 U.S.C. § 2255 to assert a claim of ineffective assistance by the attorney who represented him on appeal. *Id.* The Seventh Circuit held that the second motion was not successive because it pertained to events arising after the first petition was resolved. *Id.* While *Shepeck* weighs in favor of a determination that Barnett's petition is not successive, the court does not read it as directly addressing the issue of whether a 2254 petitioner who obtains a new direct appeal as a result of his first petition is permitted to file a second petition after that appeal concludes.

9

The court finds this reasoning persuasive. Barnett's claims, which are premised on the Indiana Court of Appeals' resolution of the claims he raised in the second direct appeal, were not ripe at the time he filed his first petition. He should be afforded a "clean slate" to pursue these claims in federal court now that the violation of his Sixth Amendment right to counsel was remedied through a new direct appeal. For these reasons, the motion to dismiss will be denied.

The next appropriate step would be to set briefing on the petition, but Barnett has filed a number of motions asking for a stay and abeyance of the petition pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), while he exhausts additional claims in a state post-conviction proceeding related to the second direct appeal.[3] (ECF 10, 18, 21, 22.) The respondent's only response to these requests is that they should be denied because the court lacks jurisdiction over the petition. (ECF 13.) That argument has now been resolved in favor of Barnett. Given the complexity of the issues presented, and the high standard that must be satisfied to obtain a stay under *Rhines*, the court finds it necessary to obtain a response from the respondent regarding the merits before issuing a ruling.

III. CONCLUSION

For these reasons, the respondent's motion to dismiss (ECF 12) is DENIED. The respondent is ORDERED to file a response addressing the merits of petitioner's requests for a stay and abeyance (ECF 10, 18, 21, 22) by **August 10, 2020**. Any reply by the petitioner shall be due by **August 24, 2020**.

---

[3] Specifically, he is pursuing claims related to appellate counsel's performance during the second direct appeal. (*See* ECF 18 at 2.)

SO ORDERED on July 27, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

11