UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY BARNETT,

      Petitioner,

         v.                                    CAUSE NO. 3:19-CV-609-JD-SJF

WARDEN,

      Respondent.

OPINON AND ORDER

Anthony Barnett, a prisoner without a lawyer, filed an amended habeas petition

challenging his 2003 conviction in Floyd County under case number 22D01-0212-FC-548

for burglary, battery, intimidation, and habitual offender adjudication. (ECF 33.) For the

reasons stated below, the petition is denied.

I.      BACKGROUND

This case has a long and complex procedural history spanning more than two

decades. The Indiana Court of Appeals set forth the facts underlying Barnett's

conviction as follows:[1]

> Cynthia Bogard ("Bogard") met Jeanette Lewis ("Lewis") in 2002, and
> soon thereafter, Lewis started bringing people to Bogard's house to smoke
> crack. Barnett was one of the people who used drugs at Bogard's house,
> and on several occasions, Barnett brought along women who would have
> sex with him in exchange for drugs. Bogard felt she was no longer in
> control of her home and asked Barnett several times to stop coming over,
> but Barnett laughed at her requests. Around the same time, Barnett and
> his ex-wife, Tonya, were trying to reconcile.

---

[1] The facts set forth by the state court are presumed correct unless the petitioner rebuts this
presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

On December 10, 2002, Bogard called Tonya and told her about Barnett's behavior, hoping Tonya could help. That same day, Bogard and others were in her home when they heard pounding on the door. Bogard opened the door a crack, peered out, and saw Barnett as he grabbed the door and pushed it open. Barnett shoved Bogard down and started screaming that she had ruined his life with Tonya. Barnett said he had brought two others to help beat up Bogard; Barnett also told Bogard he had a gun in the car. Barnett stomped on Bogard with his heel and threatened to kill her if she did not call Tonya and recant. Barnett got the phone, dialed Tonya's number, and had Bogard talk to her. Once off the phone, Bogard fled to a neighbor's house to call the police. Bogard had a knot on her head, her head was bleeding, and her shoulder hurt. She also had bruises on her shoulder, chest, and head—one of the bruises on her chest near her shoulder was a pattern injury caused by the heel of a shoe.

*Barnett v. State*, 83 N.E.3d 93, 96-97 (Ind. Ct. App. 2017) (headnote, footnote, and internal citations omitted). Tonya confirmed that Bogard had called her and told her Barnett was having sex with another woman. *Barnett v. State*, 918 N.E.2d 782 (Table), 2009 WL 4927545, at *2 (Ind. Ct. App. 2009). Barnett told Tonya that Bogard was lying and said he would "get it straightened out." *Id.* Tonya then received a second call from Bogard. *Id.* Bogard said she was "sorry for getting in the middle of this," but she denied having lied about what Barnett was doing at her house. *Id.* Bogard also said she thought her shoulder was broken and she needed to go to the hospital. *Id.* Tonya could hear Barnett "hollering" in the background. *Id.*

Barnett was initially charged with battery. *Id.* at 97. The state later filed an amended information adding a habitual offender charge.[2] *Id.* Barnett appeared in court

---

[2] Public records reflect Barnett had prior convictions for battery and burglary at the time of the offense. *See State v. Barnett,* No. 22D01-9604-CF-94 (Floyd Sup. Ct. 1996); *State v. Barnett,* No. 22D01-9504-CF-48 (Floyd Sup. Ct. 1996); *State v. Barnett,* No. C80-CR-3213-794 (Floyd Cir. Ct. closed 1980).

the day after the habitual offender charge was added, but for unknown reasons his counsel was not present. *Id.* Approximately one week later, the state filed a second amendment to the information adding burglary and intimidation charges. *Id.* Barnett and his counsel appeared for a hearing the following day, and counsel objected to the late amendment, but the court overruled his objection. *Id.* The court subsequently granted Barnett two continuances to allow him additional time to prepare for trial. *Id.* A jury trial began approximately two months after the information was amended to add the burglary and intimidation charges. *Id.* During trial, Barnett asked to hold proceedings in abeyance so that he could conduct further investigation related to a defense witness. *Id.* This motion was granted and the trial was stayed for approximately a month while Barnett's counsel completed his investigation. *Id.*

Thereafter, trial proceedings resumed. *Id.* Barnett's defense at trial was that Bogard let him come and go from her home as he pleased in exchange for bringing her groceries or giving her cash. *Id.* at 102. He claimed Bogard was angry when he did not pay her money she claimed she was owed, and this prompted her to call Tonya, ostensibly to get him in trouble. *Id.* The defense conceded that Barnett went to Bogard's home on the evening in question but argued that he did not push his way into the home or injure her in any way. Instead, his defense was that Bogard let him in her home willingly hoping he had money for her and injured herself by tripping over her dog. *Id.* An expert testified that Bogard's injuries were not consistent with having tripped over a dog, however, and that it took "a hell of a lot of force" to make the shoe print injury on her chest. *Barnett v. State*, 918 N.E.2d 782, 2009 WL 4927545, at *1 (Ind. Ct. App. 2009).

Barnett was ultimately found guilty of burglary, battery, intimidation, and being a habitual offender. *Barnett*, 83 N.E.3d at 97. The court ordered him to serve an aggregate term of 80 years in prison. *Id.* The Indiana Court of Appeals affirmed Barnett's conviction and sentence on direct appeal. *Id.* He sought transfer to the Indiana Supreme Court, but the petition was denied. *Barnett v. State*, 822 N.E.2d 981 (Ind. 2004).

In September 2005, Barnett filed a petition for state post-conviction relief. Among other claims, he asserted that his counsel on direct appeal was ineffective in not raising an argument about the untimeliness of the second amendment to the information adding the burglary and intimidation charges. *Barnett*, 83 N.E.3d at 97-98. The post-conviction court denied Barnett's petition, and he appealed. *Id.* The Indiana Court of Appeals affirmed. *Id.* at 104. He sought transfer to the Indiana Supreme Court, but his petition was denied. *Barnett v. State*, 929 N.E.2d 788 (Ind. 2010).

In 2010, Barnett filed a petition for writ of habeas corpus in federal court. *Barnett v. Superintendent*, No. 3:10-CV-157-TLS, 2013 WL 3338493 (N.D. Ind. July 2, 2013). He asserted a variety of grounds, including that his appellate counsel was ineffective in failing to argue on direct appeal that the amendment to the information adding the burglary and intimidation charges was untimely under state law. *Id.* at *3-5. Judge Theresa L. Springmann denied relief, concluding that the Indiana Court of Appeals had not unreasonably applied clearly established federal law in adjudicating Barnett's claims of ineffective assistance of counsel. *Id.* at *7.

In February 2014, the U.S. Court of Appeals for the Seventh Circuit summarily reversed and remanded for reconsideration in light of its opinion in *Shaw v. Wilson*, 721

4

F.3d 908 (7th Cir. 2013). *See Barnett v. Superintendent*, No. 3:10-CV-157-TLS, 2015 WL 3466294, at *2 (N.D. Ind. June 1, 2015). In *Shaw*, the Seventh Circuit found merit to an Indiana habeas petitioner's argument that his appellate attorney was ineffective in failing to raise an argument on direct appeal about the untimeliness of an amendment to the information under Indiana law. *Shaw*, 721 F.3d at 915-16. On remand, and in light of *Shaw*, Judge Springmann concluded that Barnett's counsel was ineffective in failing to argue on direct appeal that the state's second amendment to the information adding the burglary and intimidation charges was untimely under state law. *Barnett*, 2015 WL 3466294, at *2-*7. Judge Springmann conditionally granted Barnett's habeas petition and ordered the state to either release him within 120 days or grant him a new direct appeal where he could raise this argument with the assistance of counsel. *Id.* The order also noted that it was "disconcerting" that appellate counsel had not raised an argument about Barnett appearing without counsel at the pretrial hearing held after the habitual offender charge was added. *Id.* at *4 n.1. The order observed that "[i]f the State permits the Petitioner to file another direct appeal, this is an issue that warrants further exploration." *Id.*

Thereafter, Barnett was permitted to file a new direct appeal in the Indiana Court of Appeals with the assistance of appointed counsel, Michael Ausbrook, the same

attorney who represented him in his federal habeas case.[3] *Barnett*, 83 N.E.3d at 95.

Through his appointed counsel, he raised two arguments pertaining to the state's ability

to conduct another direct appeal. *Id.* at 99-100. The Indiana Court of Appeals rejected

these arguments, concluding that a new direct appeal was one of the options given by

Judge Springmann to remedy the Sixth Amendment violation that occurred in his first

appeal. *Id.* The court observed, "If Barnett believed that it was error for the District

Court to grant a new direct appeal as part of the remedy, he should have sought relief

in the federal courts." *Id.*

Barnett also raised a challenge to the timeliness of the state's amendment to the

information adding the burglary and intimidation charges. *Id.* at 100. The Indiana Court

of Appeals rejected this argument as well, concluding that Ind. Code § 35-34-1-5

permitted amendments to an information any time before trial, provided that the

amendment did not prejudice the defendant's substantial rights. *Id.* at 100-01. The court

found that the amendment did not prejudice Barnett because he was given two

extensions of the trial date, as well as a one-month adjournment during trial, which

afforded him three months to prepare a defense to the later-added charges. *Id.* at 102.

The court pointed out that new charges were based on the same underlying acts as the

battery charge, and Barnett's defense theory—that Bogard willingly let him in her home

---

[3] The state failed to initiate a new appeal by the original deadline set by Judge Springmann due to confusion over who was required to take this step under the terms of the order. *See Barnett v. Neal*, 860 F.3d 570, 572 (7th Cir. 2017). Judge Springmann subsequently granted the state an extension of time to initiate the new appeal, and the state complied. *Id.* Barnett appealed to the Seventh Circuit, arguing that the court abused its discretion in extending the time for the state to act and that he was entitled to immediate release from custody, but the Circuit rejected this argument and affirmed the court's actions. *Id.*

and injured herself by tripping over her dog—was equally applicable to the battery charge and the later-added intimidation and burglary charges. *Id.* Thus, the court found that Barnett's rights were not impaired by the late amendment. *Id.*

Barnett also argued in his second direct appeal that he was denied counsel at a critical stage in violation of the Sixth Amendment because he appeared by himself at the pretrial hearing held shortly after the state added the habitual offender charge. *Id.* at 103. The Indiana Court of Appeals concluded that any violation of Barnett's rights was harmless, because even though his counsel was not present at that particular hearing, Indiana law permitted counsel to object to the habitual offender charge at any time, up to and including trial. *Id.* at 103-04. Thus, the court concluded Barnett was not prejudiced by counsel's unexplained absence from that hearing. *Id.* Barnett sought transfer to the Indiana Supreme Court, but his petition was denied. *Barnett v. State*, 95 N.E.3d 1294 (Ind. 2018).

Barnett then returned to federal court with another habeas petition, this time asserting claims stemming from his second direct appeal. *Barnett v. Warden*, No. 3:19-CV-609-JD-MGG, 2020 WL 4284709 (N.D. July 27, 2020). The state sought to dismiss the petition as an unauthorized successive petition over which this court lacked jurisdiction. *Id.* at *3. After briefing, the court issued a ruling determining that Barnett's petition was not "successive" within the meaning of § 2244(b)(3) because the claims it contained pertained to his second direct appeal, which were not ripe at the time his first federal petition was filed. *Id.* at *3-4.

After this threshold issue was resolved, Barnett moved for a stay and abeyance of his petition pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), while he exhausted additional claims in a state post-conviction proceeding. (*See* ECF 18, 24.) Specifically, he sought to raise claims that the attorney representing him in his second direct appeal, Attorney Ausbrook, provided ineffective assistance. (*Id.*) After briefing, this court granted Barnett's motion and stayed the case pending a resolution of the state post-conviction proceeding. (ECF 27.)

Thereafter, Barnett presented his claims regarding Attorney Ausbrook's performance to the state post-conviction court. *Barnett v. State*, 245 N.E.3d 678 (Table), 2024 WL 4296926 (Ind. Ct. App. 2024). The court denied relief. *Id.* Barnett appealed asserting the following claims: (1) Attorney Ausbrook was ineffective in failing to present an Ex Post Facto argument challenging the state's amendment to the information adding the burglary and intimidation charges; (2) Attorney Ausbrook was ineffective in failing to cite *Haak v. State*, 695 N.E.2d 944 (Ind. 1998), in support of his argument that the amendment was untimely under state law; and (3) Attorney Ausbrook was ineffective in failing to bring "alleged factual errors" to the court's attention related to his first direct appeal. *Id.* at *4-*6. The Indiana Court of Appeals rejected each of these arguments and affirmed the denial of post-conviction relief. *Id.* Barnett sought transfer to the Indiana Supreme Court, but his petition was denied. *Barnett v. State*, 250 N.E.3d 1055 (Ind. 2025).

In February 2025, Barnett notified this court that the state post-conviction proceedings had concluded. He also filed the present amended petition. (ECF 30, 33.)

He raises the following claims: (1) his federal due process rights were violated when the state failed to serve him with notice of its intent to initiate his second direct appeal; (2) his Sixth Amendment right to counsel was violated when he appeared without counsel at the pretrial hearing held after the state added the habitual offender charge; (3) the amendment to the information adding the burglary and intimidation charges violated his federal due process and equal protection rights; (4) Attorney Ausbrook was ineffective in not raising an argument under the Ex Post Facto Clause related to the amendment to the information adding the burglary and intimidation charges; and (5) Attorney Ausbrook was ineffective in failing to present the transcripts of the pretrial hearing in which he appeared without counsel. (ECF 33 at 3-4.)

In response to the petition, Respondent reasserts his argument that the petition is an unauthorized successive petition over which this court lacks jurisdiction. (ECF 35 at 8-12.) Respondent alternatively argues that Barnett's claims are procedurally defaulted and/or without merit under governing standards. (*Id.* at 13-23.) Barnett filed a traverse in support of his petition. (ECF 49.) The matter is now ripe for adjudication.

II.    ANALYSIS

A.    Jurisdiction

The court turns first to the Respondent's argument that jurisdiction is lacking.[4] A state inmate is generally afforded one opportunity to pursue federal habeas relief under

---

[4] Ordinarily, the court might prohibit a party from rehashing a previously rejected argument. *See Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). However, the court finds it appropriate to ensure that jurisdiction is secure. *Smoot v. Mazda Motors of America, Inc.*, 469 F.3d 675, 678 (7th Cir. 2006) (observing that federal courts have a duty to "police their jurisdiction").

28 U.S.C. § 2254 related to his conviction. *See Banister v. Davis*, 590 U.S. 504, 508 (2020); 28 U.S.C. § 2244. "[A]fter that, the road gets rockier." *Banister*, 590 U.S. at 509. To file a second or "successive" application for federal habeas relief, the petitioner must obtain leave from the Court of Appeals. 28 U.S.C. § 2244(b)(3). If a successive petition has not been authorized by the Court of Appeals, a district court has no jurisdiction to consider it. *Burton v. Stewart*, 549 U.S. 147, 157 (2007).

What constitutes a "successive" petition is not always a straightforward matter. The phrase "does not simply refer to all habeas filings made second or successively in time, following an initial application." *Banister*, 590 U.S. at 511 (internal quotation marks omitted). For instance, if the petitioner's first petition was dismissed for technical or procedural reasons, such as failing to pay the filing fee or failing to exhaust state court remedies, a second petition is not considered successive. *United States v. Obeid*, 707 F.3d 898, 903 (7th Cir. 2013). Additionally, if the petitioner's first habeas petition results in an order granting resentencing, a subsequent petition challenging the new sentence is not considered successive. *Magwood v. Patterson*, 561 U.S. 320, 342 (2010).

Respondent argues that the present petition is successive within the meaning of Section 2244(a) because Barnett already pursued federal habeas relief, and he was not granted a new sentencing hearing like the petitioner in *Magwood*. (ECF 35 at 9.) Barnett argues that his petition is not successive. (ECF 49 at 1-12.) The court agrees with Barnett.

It is true that this case does not fit neatly within the holding of *Magwood*. Barnett obtained favorable relief in connection with his first habeas petition, but he was not resentenced. However, that is not the end of the analysis. In connection with Barnett's

first federal habeas petition, it was determined that his Sixth Amendment right to counsel was violated during his direct appeal. The state was ordered to either release him or reopen his direct appeal, and the state opted to reopen his direct appeal. The claims Barnett now seeks to raise arose from the Indiana Court of Appeals' resolution of his second direct appeal and his attorney's performance during that appeal. (ECF 33 at 3-4.)

In a Seventh Circuit case involving similar facts, the district court granted the petitioner a conditional writ based on a *Batson* violation (involving the use of peremptory challenges to exclude jurors of a certain race), and gave the state the choice of either releasing the petitioner or affording him a new *Batson* hearing. *Coulter v. McCann*, 484 F.3d 459, 466 (7th Cir. 2007). The state opted to provide the petitioner with a new *Batson* hearing. *Id.* After that hearing, the state trial court found that the prosecution's reasons for its use of peremptory strikes were race-neutral, and the state appellate court affirmed this ruling. *Id.* The petitioner then returned to federal court with a new habeas petition challenging this ruling. *Id.* The Seventh Circuit observed that the second petition was not "successive" because the petitioner was "challenging a new ruling of the state court." *Id.* Similarly, the Seventh Circuit observed in *Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998), that "[a] collateral attack should be disregarded for counting purposes . . . when the first [petition] is successful, and the prisoner contends that new errors ensued." That is what occurred here. Barnett was

granted federal habeas relief, resulting in a new direct appeal, and he asserts that new errors occurred during that second appeal.[5]

Although the Seventh Circuit does not appear to have decided a case in this exact procedural posture, the court finds a Sixth Circuit opinion instructive. *Storey v. Vasbinder*, 657 F.3d 372, 377 (6th Cir. 2011). In *Storey*, the Sixth Circuit held that a second federal habeas petition should not be considered successive—and that "the tally of applications is reset to zero"—when the petitioner pursues a second direct appeal because he received ineffective assistance of counsel in the first appeal. *Id.* The court explained:

> The reason why the petitioner was granted a new appeal is that his counsel was ineffective with respect to his first direct appeal; . . . such a petitioner should be given the same clean slate with respect to habeas review as a defendant whose counsel did not bungle his first direct appeal. The upshot of this rule is that the petitioner can eventually seek habeas relief on all of the claims presented in his remedial appeal, in which presumably he will have competent counsel.

*Id.* (citations and internal quotation marks omitted).

The court finds the Sixth Circuit's reasoning persuasive. It was previously determined by a federal court that Barnett's Sixth Amendment right to counsel was violated in his first direct appeal. As a result, he was afforded a second direct appeal by the state. He should be given a "clean slate" to pursue federal habeas relief related to

---

[5] Respondent makes a confusing argument that certain claims in the petition are "so clearly without merit that they should not be sufficient to keep this from being an unauthorized successive petition." (ECF 35 at 10.) Respondent cites no case law in support of this proposition, and nothing in the statutory language hinges the determination of whether a petition is successive on the merits of the claims it contains. *See* 28 U.S.C. § 2244.

the second direct appeal. *Id.* The court is satisfied that jurisdiction is secure and turns to the petition.

B.       Petition

Barnett's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a district court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and internal quotation marks omitted). The court can grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (citation omitted). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Id.* (citation

omitted). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (citation omitted). With these principles in mind, the court turns to Barnett's claims.

### 1. Due Process Violation Resulting From Lack of Notice of State's Filing Initiating Second Direct Appeal

Barnett first claims that his federal due process rights were violated when the state failed to serve him with notice of its filing in the Indiana Court of Appeals requesting that he be provided with a second direct appeal in response to the order granting the conditional writ. (ECF 33 at 3.) Respondent argues that this claim is procedurally defaulted and also without merit. (ECF 35 at 14-15.)

Before considering the merits of a claim contained in a habeas petition, the court must ensure that the petitioner exhausted all available remedies in state court with respect to that claim. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal constitutional rights. *Davila v. Davis*, 582 U.S. 521, 528 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, including seeking discretionary review in the state court of last resort. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. The companion procedural default doctrine, also rooted

in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. *Davila*, 582 U.S. at 528; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

A habeas petitioner can overcome a procedural default by showing cause for the default and resulting prejudice. *Davila*, 582 U.S. at 528. "Cause" in this context means "an objective factor external to the defense that impeded the presentation of the claim to the state courts." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018) (citation and internal quotation marks omitted). "A factor is 'external to the defense' only if it 'cannot fairly be attributed to' the prisoner." *Id.* (citation omitted). A petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice because he is actually innocent. *House v. Bell*, 547 U.S. 518, 536 (2006).

Here, the Indiana Court of Appeals concluded that Barnett waived his due process claim by failing to adequately develop it in his brief with arguments and citation to authority, which violated Indiana Appellate Rule 46(A)(8)(a). *Barnett*, 83 N.E.3d at 100. The finding of waiver under state law constitutes an adequate and independent state procedural ground that bars federal habeas review. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) ("[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . . that decision rests on independent and adequate state

procedural grounds."). Barnett filed a traverse, but he did not clearly respond to the Respondent's procedural default argument or provide grounds for excusing the default.[6] (ECF 49.) Therefore, the claim is defaulted and cannot be considered on the merits.

Even if Barnett could overcome the procedural default, the Respondent argues that the claim lacks merit. (ECF 35 at 15-16.) As Respondent points out, Barnett does not clearly explain how his federal due process rights were violated. If he is arguing that the state should not have been permitted to initiate the second direct appeal, the Seventh Circuit's opinion in his earlier appeal precludes such an argument. *See Barnett*, 860 F.3d at 572 ("The district court correctly recognized that one remedy for that violation [of Barnett's Sixth Amendment right to counsel] was a new appeal conducted by constitutionally effective counsel."). If he is claiming that state law requirements related to service of process were not followed, the mere failure to comply with state procedures does not amount to a federal due process violation. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 366 (7th Cir. 2019) ("[T]here is no constitutional procedural due process right to state-mandated procedures.").

Instead, the hallmark of federal due process is notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). The record reflects that Barnett received

---

[6] If he is trying to assert ineffective assistance by Attorney Ausbrook as cause to set aside the default of his due process claim, he did not exhaust a claim in the state proceedings regarding counsel's performance related to this issue, which is a necessary prerequisite for using it as cause to excuse a default on habeas review. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

such process. His counsel, Attorney Ausbrook, was well aware of Judge Springmann's order affording the state the option of reopening his direct appeal as a remedy for the Sixth Amendment violation, because Attorney Ausbrook represented Barnett in the case before Judge Springmann. Immediately after the state sought to initiate the second direct appeal, Attorney Ausbrook filed a limited appearance in the Indiana Court of Appeals and sought to strike the state's filing. *See Barnett v. Indiana,* No. 22A01-1510-CR-01742 (Ind. Ct. App. order dated Oct. 27, 2015). The Indiana Court of Appeals issued an order permitting counsel to appear but denying the request to strike and directing the clerk to open a new direct appeal for Barnett. *Id.* A copy of this order was served on Attorney Ausbrook, as were all subsequent orders in the appeal. *Id.*

During the course of the appeal, Barnett filed an opening brief, a reply brief, and a petition for rehearing. (ECF 35-13; ECF 35-17; ECF 35-18.) His arguments were considered and addressed by the Indiana Court of Appeal in a detailed published opinion. *Barnett*, 83 N.E.3d at 99-104. He has not shown that he was denied notice of the second direct appeal or an opportunity to be heard during that proceeding. Any minor error that occurred related to the state's initiation of the second appeal must be considered harmless, because it did not prevent him from participating in the appeal. *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988) ("The harmless error rule promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."). Barnett has not demonstrated an entitlement to federal habeas relief on this ground.

17

2.    *Violation of Sixth Amendment Right to Counsel at a Critical Stage*

Barnett next claims that his Sixth Amendment right to counsel was violated when he appeared without his attorney at the pretrial hearing held shortly after the prosecution added the habitual offender charge. (ECF 33 at 3.) Respondent argues that this claim is without merit under governing standards. (ECF 35 at 18.)

In rejecting this argument in Barnett's second direct appeal, the Indiana Court of Appeals recognized that the accused has a Sixth Amendment right to counsel at all critical stages of the prosecution. *Barnett*, 83 N.E.3d at 104 & n.15. However, the court concluded that any violation of Barnett's right caused by his counsel's absence from that hearing was harmless, because counsel did not need to be present at the hearing to object to the addition of the habitual offender charge. Instead, Indiana law permitted him to object at any time, even during trial. *Id.* Thus, Barnett did not suffer prejudice from counsel's unexplained absence at that hearing. The Indiana court's resolution of this claim was not an unreasonable application of Supreme Court precedent.[7]

"The Sixth Amendment ensures that defendants facing incarceration will have counsel at all critical stages of the criminal process." *Schmidt v. Foster*, 911 F.3d 469, 478 (7th Cir. 2018). A critical stage means "a step of a criminal proceeding that holds significant consequences for the accused," or where "the accused faces prejudice that counsel could help avoid." *Id.* If a defendant is denied counsel entirely, or "if counsel

---

[7] The Indiana Court of Appeals cited to state case law in setting forth the governing standards, but under AEDPA a state court need not cite to or even be aware of applicable Supreme Court case law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). The standard employed by Indiana Court of Appeals is in accord with Supreme Court precedent.

entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic*, 466 U.S. 648, 659 (1984). In such circumstances, prejudice is presumed. *Id.* Conversely, the harmless error analysis applies when the Sixth Amendment violation did not "contaminate" the entire proceeding. *Satterwhite*, 486 U.S. at 256-57 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). Under this standard, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). On habeas review, the "harmless beyond a reasonable doubt" standard does not apply; rather, the reviewing court must consider whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

The record reflects that Barnett was not denied counsel entirely. To the contrary, counsel was appointed to represent him shortly after his arrest in December 2002 and he remained represented throughout the pretrial, trial, and post-trial proceedings. *See Barnett*, 83 N.E.3d at 104 & n.16. Records reflect that counsel served as a vigorous advocate for Barnett throughout these proceedings. Among other things, counsel conducted extensive discovery, filed pre- and post-trial motions, cross-examined the state's witnesses, moved for a mistrial, moved for a directed verdict, and presented witnesses and arguments on behalf of the defense. (*See* ECF 38-4 to ECF 38-7; *see also* ECF 35-1 at 1-15.) Counsel was absent from one pretrial hearing for reasons that are not

reflected in the record. (ECF 49-1 at 29.) The hearing was quite brief, however, and the transcript of the hearing spans less than one page. (*Id.*) The court simply called the case, entered a plea of not guilty to the habitual offender charge, advised Barnett he had the right to remain silent, gave him a copy of the amended information, and told him to "take it up with your attorney." (*Id.*)

Even though counsel was not present at that hearing, Indiana law permitted counsel to raise an objection to the timeliness of the habitual offender charge after the hearing if he deemed it appropriate. *Barnett*, 83 N.E.3d at 104; *see also* Ind. Code § 35-34-1-4 (allowing motions to dismiss information based on untimeliness any time before or during trial). Barnett takes issue with the Indiana Court of Appeals' determination that Indiana law permitted his counsel to object to the timeliness of the habitual offender charge after the hearing. (ECF 49 at 13.) However, this court does not have authority to review the state court's determination on this state law issue. *Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court has no authority to "second-guess state courts in interpreting state law"). Instead, "federal courts reviewing [ineffective assistance of counsel] claims must defer to state-court precedent concerning the questions of state law underlying the defendant's ineffectiveness claim." *Shaw,* 721 F.3d at 914.

Barnett also argues that his trial counsel couldn't have objected to the habitual offender charge because counsel never knew that this charge was added. (ECF 49 at 13-14.) However, this assertion is belied by the record. The record reflects that Barnett's counsel received written notice of the amendment to the information. (ECF 35-1 at 2.)

Additionally, at a pretrial hearing held approximately a week after the habitual offender charge was filed, Barnett's counsel was present when the court stated on the record that the habitual offender charge had been added to the information. (ECF 49-1 at 31-36.) The court advised Barnett of his rights a second time regarding this charge, presumably because his counsel was absent the first time. (*Id.* at 35-36.) Barnett's counsel subsequently objected to the addition of the burglary and intimidation charges, but not to the addition of the habitual offender charge. (ECF 38-9 at 71-85.) Counsel's objection was overruled, but the court granted counsel's request for an extension of the trial date. Barnett was later granted a second extension of the trial date, as well as a one-month adjournment of the trial to give his counsel additional time to prepare their defense.

The issue of whether Barnett was a habitual offender was then presented to the jury after a guilty verdict was returned on the other charges. (ECF 38-6 at 132-182.) Barnett's counsel made an opening statement, cross-examined the state's witnesses, and made a closing argument regarding the habitual offender charge, but the jury ultimately found him guilty. (*Id.*) After reviewing the record, the court cannot conclude that trial counsel's absence at one pretrial hearing had an injurious effect on the jury verdict. Trial counsel had ample opportunity to challenge the amended information despite his absence at the hearing, and counsel also had ample time to prepare a defense to the habitual offender charge. Barnett has not demonstrated an entitlement to habeas relief on this ground.

21

3.     *Due Process and Equal Protection Violation Caused By Late Addition of Burglary and Intimidation Charges*

Barnett next claims that the state's late addition of the burglary and intimidation charges violated his federal due process and equal protection rights. (ECF 33 at 4.) Respondent argues that this claim is procedurally defaulted and also fails on the merits. (ECF 35 at 16-17.)

Barnett did not assert any claim in his second direct appeal that his federal due process and equal protection rights were violated in connection with the state's amendment to the information adding the burglary and intimidation charges. (ECF 35-13.) Although he raised a challenge to the late amendment, his argument was that the amendment was impermissible under state law. (*Id.* at 7, 29-32.) Barnett did not fairly present the state courts with his federal claim when he had the opportunity to do so, meaning it is defaulted in this proceeding. *Baldwin*, 541 U.S. at 30-31; *Boerckel*, 526 U.S. at 845. Again, Barnett does not respond to the Respondent's procedural default argument or provide cause to set aside the default. (*See* ECF 49.) The claim is thus defaulted.

Assuming for the sake of argument Barnett could overcome the procedural default of this claim, the Respondent argues that the claim fails on the merits. Barnett does not clearly articulate how his rights were violated and as stated, the hallmark of federal due process is notice and an opportunity to be heard. *Loudermill*, 470 U.S. at 542. Barnett had that opportunity when he was advised on the record of the habitual offender charge, his counsel was granted three extensions to prepare the defense case, and his counsel did in fact mount a defense to the habitual offender charge. Barnett also

suggests that he was treated less favorably than other defendants in violation of Equal Protection, but he does not elaborate or provide any specific examples. At the time of Barnett's case Indiana courts applied the amendment deadline flexibly, and there are many instances of Indiana courts permitting late amendments to an information in cases that went to trial around the same time as Barnett's. *See, e.g., Shaw v. State*, 82 N.E.3d 886, 897 (Ind. Ct. App. 2017); *Townsend v. State*, 753 N.E.2d 88, 94 (Ind. Ct. App. 2001); *Prewitt v. State*, 761 N.E.2d 862 (Ind. Ct. App. 2002); *Tripp v. State*, 729 N.E.2d 1061, 1064 (Ind. Ct. App. 2000).

The Indiana Court of Appeals reasonably concluded that Barnett was not prejudiced by the late amendment. *Barnett*, 83 N.E.3d at 103. The burglary and intimidation charges did not involve any new witnesses or evidence and involved the same underlying facts as the battery charge. (ECF 38-9 at 74-75.) There was simply a new prosecutor who reviewed the evidence and determined that additional charges were warranted. (*Id.*) After the amendment was made, Barnett was granted two extensions of time—totaling approximately two months—to prepare for trial. *Barnett*, 83 N.E.3d at 103. There was also an adjournment of the trial at his request, meaning the defense case was not presented until approximately three months after the addition of the burglary and intimidation charges. *Id.* Moreover, his theory at trial was that he did not force his way into Bogard's home, threaten her, or injure her in any way. This defense was equally applicable to the original battery charge and the later-added charges of burglary and intimidation. *Id.* The record thus reflects that Barnett had ample time to prepare a defense to the burglary and intimidation charges, and did in fact

mount a defense to these charges. He has not demonstrated an entitlement to federal habeas relief even if the claim was not procedurally defaulted.

### 4.    *Attorney Ausbrook's Failure to Raise an Ex Post Facto Claim*

Barnett next claims that Attorney Ausbrook provided ineffective assistance when he failed to raise an Ex Post Facto argument related to the addition of the burglary and intimidation charges. (ECF 33 at 4.) Respondent argues that this claim is without merit under governing standards. (ECF 35 at 18-20.)

To prevail on a claim of ineffective assistance, the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Harrington v. Richter*, 562 U.S. 86, 105 (2011). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017). The petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Gilbreath*, 21 F.4th at 981. The court's review of counsel's performance on habeas review is highly deferential: "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The court also must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*,

562 U.S. 115, 125 (2011). Counsel is afforded significant discretion in selecting a trial strategy based on the information known at the time. *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). "[C]ourts must defer to any strategic decision the lawyer made that falls within the wide range of reasonable professional assistance, even if that strategy was ultimately unsuccessful." *Shaw*, 721 F.3d at 914.

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Gilbreath*, 21 F.4th at 981 (citation omitted). In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Harrington*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. If the defendant wanted counsel to raise an argument that had no merit, an ineffective-assistance claim cannot succeed because "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant

and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790.

In rejecting Barnett's claim about Attorney Ausbrook's performance, the Indiana Court of Appeals recognized *Strickland* as the governing standard. *Barnett*, 2024 WL 4296926, at *4. The court concluded that Barnett could not make the necessary showing of prejudice, because the argument he wanted counsel to raise would not have made a difference in his appeal. *Id.* at *5. This was a reasonable application of *Strickland*.

It is worth noting at the outset that Attorney Ausbrook filed a 37-page appellate brief, a 19-page reply brief, a 25-page petition for rehearing, and a 25-page petition to transfer on Barnett's behalf in his second direct appeal. (ECF 35-13; ECF 35-17; ECF 35-18.) He asserted multiple substantive arguments based on state and federal law and argued that Barnett was entitled to immediate release from custody. (*Id.*) Nevertheless, Barnett believes that counsel was incompetent in not including an Ex Post Facto argument in his brief. To understand Barnett's argument, some background is necessary.

Under Indiana law, amendments to a charging information are governed by Indiana Code § 35-34-1-5. *Barnett*, 83 N.E3d at 100. When Barnett committed the

offenses against Bogard in 2002, that section provided that a substantive amendment to an information had to be made at least 30 days before the "omnibus date," an Indiana term for a type of pretrial hearing.[8] *Id.* For many years, Indiana courts regularly permitted amendments to a charging information after this deadline, as long as it did not prejudice the defendant. *See Brown v. State*, 912 N.E.2d 881, 889–90 (Ind. Ct. App. 2009) ("For over twenty years . . . case law regularly permitted amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35–34–1–5(b)."). In 2007, however, the Indiana Supreme Court held in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007), that the 30-day deadline contained in Indiana Code § 35-34-1-5 applied regardless of whether a defendant was prejudiced by the amendment.

In response to the Indiana Supreme Court's holding, the state legislature amended the statute only a few months after *Fajardo* was decided. *Barnett*, 83 N.E.3d at 101. Under the new (and current) version of the statute, an amendment to the information can be made at any time before trial, as long as "the amendment does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(b). The Indiana Court of Appeals subsequently held in several cases that the revised statute can be

_____

[8] The "omnibus" date simply serves as a point of reference for scheduling in Indiana criminal proceedings. Ind. Code § 35-36-8-1(b). Barnett appears to confuse this with the statute of limitations applicable to his offenses, which is not the same thing. (*See* ECF 49.) The additional charges filed by the state were for Class A felony burglary and Class D felony intimidation. *Barnett*, 2024 WL 4296926, at *2. Under Indiana law, prosecution for a Class A felony "may be commenced at any time," and prosecution for a Class D felony must be commenced within five years of the offense. Ind. Code § 35-41-4-2(a)(1), (c). Barnett's offenses were committed in December 2002, and the burglary and intimidation charges were filed in February 2003, well within the limitations period. Thus, if Barnett is arguing that burglary and intimidation charges were added after the applicable statute of limitations expired, his argument is unavailing.

retroactively applied to defendants who committed offenses before its effective date without violating the Ex Post Facto Clause of the U.S. Constitution or the Indiana Constitution.[9] *See, e.g., Brown*, 912 N.E.2d at 888; *Hurst v. State*, 890 N.E.2d 88 (Ind. Ct. App. 2008).

In Barnett's case, the burglary and intimidation charges were added approximately 28 days after the omnibus hearing date. *Barnett*, 83 N.E.2d at 103. Nevertheless, the Indiana Court of Appeals concluded that under the revised version of the statute, amendments to an information are permissible any time up until trial, as long as a defendant's substantive rights are not prejudiced. The court further concluded that Barnett's substantive rights were not prejudiced because he had ample time to prepare a defense to the later-added charges. *Id.* Even though Attorney Ausbrook did not expressly raise an Ex Post Facto argument, the Indiana Court of Appeals observed that several prior cases had rejected Ex Post Facto challenges to Indiana Code § 35-34-1-5(b) under both Indiana law and federal law. *Id.* at 101. The court adopted those holdings in Barnett's case. *Id.* This decision was in accord with Supreme Court precedent.

Under the Ex Post Facto Clause, states "may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990); *see also Weaver v. Graham*, 450 U.S. 24, 28 (1981). "The critical question

---

[9] Attorney Ausbrook was clearly aware of this body of law, because he cited several of these cases to the Indiana Court of Appeals. (*See* ECF 35-17 at 4-5.) In fact, counsel appears to have been intimately familiar with the law surrounding Indiana Code § 35-34-1-5, as he successfully represented another federal habeas petitioner on a claim related to the application of that statute to his case. *See Shaw*, 721 F.3d at 910.

is whether the law changes the legal consequences of acts completed before its effective date." *Weaver*, 450 U.S. at 31. However, "procedural" changes in criminal law can be applied retroactively without violating the Clause, even if they "work to the disadvantage of the accused." *Collins*, 497 U.S. at 43. In determining whether a change is procedural versus substantive, "it is logical to think that the term refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Id.* A procedural change will be considered substantive if it alters state evidentiary rules to require less evidence to obtain a conviction. *Carmell v. Texas*, 529 U.S. 513, 531 (2000).

The change in law at issue here merely altered the process of adjudicating criminal charges; it did not lessen the quantum of evidence required, change the definition of any crimes, or increase the statutory penalty for any crime. *See Baker v. Neal*, No. 21-1707, 2022 WL 19237051, at *1 (7th Cir. Nov. 21, 2022) ("Indiana's amendment of its omnibus-date statute did not alter Baker's criminal liability or sentencing exposure and thus could not have violated the Ex Post Facto Clause."). This is in accord with the Indiana case law that was adopted by the court in Barnett's case. *See, e.g., Ramon v. State*, 888 N.E.2d 244 (Ind. App. Ct. 2008) (revision to Indiana Code § 35-34-1-5(b) after *Fajardo* did not amount to an Ex Post Facto law because it "creates no new crimes, does not change the elements of any crime, and does not alter the sentencing statutes"). There is no basis to conclude that had Attorney Ausbrook raised an Ex Post Facto argument in Barnett's second direct appeal, the case likely "would have been remanded for a new trial or that the decision of the state trial court would

have been otherwise modified on appeal." *Howard*, 225 F.3d at 790. He has not demonstrated an entitlement to federal habeas relief on this ground.

### 5.     *Attorney Ausbrook's Failure to Submit Transcript*

Barnett's final claim is that Attorney Ausbrook was incompetent in failing to present the Indiana Court of Appeals with a transcript of the pretrial hearing in which he appeared without his trial counsel shortly after the habitual offender charge was added. (ECF 33 at 4.) Respondent argues that this claim lacks merit under governing standards. (ECF 35 at 20-21.)

In rejecting this claim, the Indiana Court of Appeals applied *Strickland* and found no prejudice resulting from the lack of a transcript. *Barnett*, 2024 WL 4296926, at *4-6 n.3. The court noted that Barnett did not clearly explain why the transcript was needed because no one had ever disputed that he appeared without counsel at that hearing. *Id.* Nevertheless, the court concluded that he was not prejudiced by counsel's absence because counsel could have objected to the addition of the habitual offender charge at a later date if he deemed that appropriate. *Id.* The Indiana court's decision was a reasonable application of *Strickland*.

Barnett does not explain in his federal petition why he believes the transcript was necessary. There is no dispute that his counsel was absent from the pretrial hearing, as this fact is clearly reflected in the chronological case summary. (ECF 38-12 at 10.) The Indiana Court of Appeals presumed counsel was absent in reaching its decision. *Barnett*, 2024 WL 4296926, at *4-6. Barnett has not demonstrated that had Attorney Ausbrook provided the transcript confirming counsel's absence, there is "a reasonable probability

that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790. He is not entitled to federal habeas relief on this ground.

Therefore, the petition must be denied. Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons explained above, Barnett's claims are procedurally defaulted and/or without merit under governing standards. The court finds no reason to conclude that reasonable jurists would debate the court's ruling or find a reason to encourage him to proceed further. Accordingly, the court declines to issue him a certificate of appealability.

## III.    CONCLUSION

For these reasons, the amended petition (ECF 33) is DENIED, and the petitioner is DENIED a certificate of appealability. The clerk is DIRECTED to close this case.

SO ORDERED on October 14, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT